Joseph G. Adams (#018210)
Rachael Peters Pugel (#032626)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: jgadams@swlaw.com
         rpugel@swlaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swimlane, LLC, a Delaware limited liability company, <br><br>  Plaintiff, <br><br>  v. <br><br> CyberSponse, Inc., a Florida corporation; Joseph Loomis and Kimberly Loomis, husband and wife, <br><br>  Defendants. | No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Swimlane, LLC ("Swimlane"), for its complaint against defendants CyberSponse, Inc. ("CyberSponse"), Joseph Loomis, and Kimberly Loomis, hereby alleges as follows:

## PARTIES

1.   Swimlane is a Delaware limited liability company with its principal place of business located in Louisville, Colorado.

2.   CyberSponse is a Florida corporation with its principal place of business located in Washington, D.C.  Upon information and belief, CyberSponse transacts interstate business in Arizona and elsewhere throughout the United States.

3.   On information and belief, Joseph Loomis is the President and CEO of

1  CyberSponse.

2      4.      On information and belief, Joseph Loomis and Kimberly Loomis are
3  residents of Washington, D.C.

4      5.      On information and belief, Joseph Loomis has at all material times been
5  married to Kimberly Loomis.  On information and belief, Joseph Loomis committed all
6  acts alleged herein on behalf of and for the benefit of the marital community.

**JURISDICTION AND VENUE**

8      6.      This action for false advertising, declaratory judgment, unfair competition,
9  and related causes of action arises under 15 U.S.C. § 1125(a), 28 U.S.C. § 2201, and the
10  common law of the State of Arizona.

11      7.      This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C.
12  § 1338 for claims arising under the Lanham Act, and under 28 U.S.C. § 1367 and 28
13  U.S.C. § 1338(b) for the related state-law claims.

14      8.      This Court has personal jurisdiction over defendants because defendants
15  have committed acts of false advertising and unfair competition in the District of Arizona
16  and elsewhere in the United States.  On information and belief, defendants have
17  substantial and continuous contacts with the State of Arizona; have purposefully directed
18  their infringing activities at Arizona; and purposefully availed themselves of the privilege
19  of conducting business in Arizona.  Further, defendants have committed torts in or
20  directed at the forum.

21      9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c)
22  because a substantial part of the events giving rise to the claim occurred in this judicial
23  district, and because defendants are subject to personal jurisdiction in this district.

**FACTS**

25      10.     Founded in 2014, Swimlane is a company that provides cyber security
26  services to large enterprises.  Using Swimlane's innovative solutions, companies can
27  track, manage, and automate their responses to cyber security alerts.  Swimlane is a leader
28  in the growing market for security orchestration and automation incident response and for

enterprises.

11. Since its inception, Swimlane has enjoyed a strong reputation for innovation. Its customers include Fortune 1000 corporations, large agencies of the federal government, and providers of Internet and security services. In 2016, it raised more than $4 million from private investors, in addition to the $2 million from its founders.

12. The founders of Swimlane are Cody Cornell and Brian Kafenbaum. Prior to founding Swimlane, Mr. Cornell spent 15 years in the IT and security industries, including roles with the U.S. Defense Information Systems Agency (DISA), the Department of Homeland Security (DHS), American Express, and IBM Global Services. Mr. Kafenbaum has 18 years of industry experience with both Fortune 500 companies and federal government agencies, and he has supported global cyber security programs with Lucent Technologies, Ameriprise, and the U.S. Defense Logistics Agency.

13. CyberSponse also is a company that provides security solutions for businesses. It competes directly with Swimlane for customers.

14. The President and CEO of CyberSponse is Joseph Loomis.

15. For over two years, Mr. Loomis has adopted a strategy of repeatedly attempting to establish a business partnership with Swimlane, and when those proposals did not succeed, publicly threatening Swimlane with accusations of intellectual property infringement. Although CyberSponse and Mr. Loomis have repeatedly accused Swimlane of infringement, he has never provided any supporting details and has never pursued any of his threats in court.

16. Mr. Loomis first contacted Mr. Cornell via LinkedIn on June 26, 2014 and suggested that Mr. Loomis and Mr. Cornell meet to discuss their respective companies, CyberSponse and Swimlane. This meeting never took place.

17. Mr. Loomis then started to threaten Swimlane, and he contacted Mr. Cornell on January 28, 2015 by e-mail and accused him of "potential (and soon likely) patent infringement," and stated that he "wanted to notice [sic] you of the risks associated to [sic] copying another person's business or idea."

18. On March 4, 2015, Mr. Cornell attended and presented at Venture Madness, an innovative startup competition in Arizona. During Mr. Cornell's presentation, Mr. Loomis sat in the back of the room and recorded the presentation. Upon information and belief, Mr. Loomis made statements at the time and afterward accusing Swimlane of infringing upon CyberSponse's intellectual property.

19. Later that same day, on March 4, 2015, Mr. Loomis contacted Mr. Cornell by text message proposed a meeting to "talk about some framework ideas" and stated that "together we will build a much larger company than apart."

20. As a result, Mr. Loomis and Mr. Cornell met. At this meeting, Mr. Loomis proposed that the two companies might work together in various ways such as CyberSponse buying Swimlane, CyberSponse and Swimlane merging, or Mr. Cornell and Mr. Kafenbaum performing professional services for CyberSponse. CyberSponse was going to provide a potential business proposition that never came to fruition.

21. In an e-mail dated March 23, 2015, Mr. Cornell expressed his opinion to Mr. Loomis that Swimlane was having difficulty identifying a "clear path forward" for Swimlane and CyberSponse to work together.

22. Mr. Loomis responded to this message on March 24, 2015 by again accusing Swimlane of infringement and threatened to "proceed with the original plan forward with the courts." In spite of this threat, CyberSponse did not proceed with any legal action.

23. After this message, Swimlane stopped responding to communications from Mr. Loomis and/or CyberSponse.

24. Despite Swimlane's attempt to cease contact with Mr. Loomis and CyberSponse, Mr. Loomis continued to accuse Swimlane of infringing upon CyberSponse's intellectual property rights throughout 2015.

25. In or around August 2015, Swimlane was in negotiations with a potential customer. In an attempt to disrupt and/or acquire the potential customer for itself, CyberSponse sent a patent application to the potential customer, suggesting that Swimlane

1   was infringing upon an allegedly soon-to-be approved patent. Despite CyberSponse's
2   misrepresentations, the potential customer entered into an agreement with Swimlane.

3   26.   In early 2016, Mr. Loomis changed course yet again. On January 19, 2016,
4   he sent an e-mail to Mr. Cornell in which he proposed trying to "bury the hatchet or figure
5   out a win-win."

6   27.   Receiving no response, Mr. Loomis again resumed his baseless threats. On
7   February 2, 2016, Mr. Loomis tweeted @workhardr (Mr. Cornell's Twitter handle), "You
8   plan to let the market I reached out to you but then you decided to copy @CyberSponse
9   and call it your own idea? Nice.."

10   28.   Upon information and belief, Mr. Loomis made additional statements to
11   third parties throughout 2015 and 2016 accusing Swimlane of infringing upon
12   CyberSponse's intellectual property.

13   29.   On July 22, 2016, counsel for CyberSponse sent a letter to Swimlane
14   accusing Swimlane of intellectual property infringement (the "Letter").

15   30.   In the Letter, counsel for CyberSponse claimed that CyberSponse has "an
16   expansive IP portfolio, which has been developed over many years, including patents
17   currently before the USPTO, trade secrets, and copyrights" regarding CyberSponse's
18   platform. The Letter failed to identify any specific patent applications or registrations,
19   any trade secrets, or any copyrights.

20   31.   Swimlane responded to the Letter through counsel. Among other things,
21   Swimlane requested that CyberSponse "provide us with specifics" regarding their claimed
22   intellectual property rights so that Swimlane and its counsel could evaluate these
23   allegations. CyberSponse refused to provide any information about its claimed rights.

24   32.   Swimlane is not aware of any information or evidence suggesting that its
25   products infringe any right held by any party. When pressed to provide any evidence
26   supporting his serious claims of infringement against Swimlane, Mr. Loomis responded
27   only that "we are not going to turn over our evidence prior to filing our complaint."

28   33.   On information and belief, these allegations of infringement were made in

- 5 -

bad faith. Based on Swimlane's investigation and the failure by defendants to provide any information in support of their claims of infringement, these claims are objectively baseless. No reasonable litigant could expect success on the merits of its infringement claims without providing basic information about the intellectual property that Swimlane is supposedly infringing.

34. In its Letter, CyberSponse's counsel also contended that Swimlane's products are "alarmingly" and "eerily" similar to CyberSponse's products, and he speculated that Swimlane somehow obtained "unauthorized access provided by a CyberSponse employee, customer or contractor." However, CyberSponse failed to present any evidence whatsoever to support its broad claims of infringement.

35. These allegations of "unauthorized access" are false. Swimlane developed its products and proprietary technology without any input from CyberSponse or any person affiliated with CyberSponse.

36. In its Letter, CyberSponse's counsel also asserted – again, without any support – that Swimlane had engaged in "predatory, anti-competitive pricing" of its products. CyberSponse failed to identify any evidence to support this allegation other than the fact that a customer chose to do business with Swimland rather than CyberSponse.

37. Upon information and belief, CyberSponse has failed to grow its business and unfairly blames Swimlane for its lack of success in the marketplace. Rather than competing in the marketplace, or pursuing any legitimate legal claims, CyberSponse instead decided to use these false and unsupported claims of infringement to disrupt Swimlane's business and its customer relationships.

38. Starting in the Fall of 2016, CyberSponse and Mr. Loomis launched a sustained campaign of harassment to disrupt Swimlane's relationships with customers and potential customers. In particular, whenever CyberSponse and/or Mr. Loomis learned that Swimlane had gained a customer or was in discussions with a potential customer, CyberSponse and/or Mr. Loomis sent the June 22, 2016 Letter to the customer or potential

1  customer for the sole purpose of disrupting the relationship and persuading the customer
2  not to do business with Swimlane.

3  39. Upon information and belief, Mr. Loomis also directly approached current
4  and potential customers of Swimlane and made additional oral misrepresentations about
5  the nature of CyberSponse's intellectual property rights and additional false claims of
6  infringement against Swimlane, all in an attempt to harm Swimlane's reputation and to
7  cause Swimlane to lose sales.

8  40. As the direct result of these false claims of infringement, Swimlane lost a
9  three-year contract with a prospective customer and a prospective agreement with an
10 original equipment manufacturer ("OEM") vendor, which had the potential to be a multi-
11 million dollar deal.

12 41. In addition, on October 26, 2016, an anonymous person using a false name
13 posted the Letter on the Internet using the Scribd document platform. On information and
14 belief, the Letter was posted by Mr. Loomis or a person working at his direction.

15 42. Upon information and belief, Swimlane lost additional prospective
16 customers as a result of CyberSponse's and Mr. Loomis's distribution of the Letter.

17 43. In addition, Swimlane's reputation in the marketplace, and among current
18 and potential customers, is being damaged as the direct result of these false claims of
19 infringement.

## COUNT I

**(False Advertising Under 15 U.S.C. § 1125(a))**

22 44. Swimlane hereby realleges and incorporates by reference the preceding
23 paragraphs of this Complaint as though fully set forth herein.

24 45. In distributing the false allegations of infringement to Swimlane's customers
25 and potential customers, defendants made false and misleading material representations of
26 fact, in association with defendants' goods and services, which misrepresent the nature,
27 qualities, and origin of the defendants' services and otherwise confuse the public and lead
28 the public to believe erroneously that defendants are affiliated with Swimlane. In

particular, defendants falsely claimed that Swimlane infringed unspecified intellectual property owned by defendants.

46. These false statements by defendants actually deceived, and have the tendency to deceive, Swimlane's customers and potential customers into concluding that Swimlane infringed defendants' intellectual property.

47. Defendants knew and intended that their distribution of the false allegations of infringement constitute false and/or misleading representations, and defendants' statements have confused or are likely to confuse the public and lead the public to believe that defendants are affiliated, connected, or associated with Swimlane.

48. Defendants' false statement is material, in that it is likely to influence the purchasing decision. Indeed, Swimlane's potential customers have decided to not to do business with Swimlane based on the false statements in defendants' Letter.

49. Swimlane has no adequate remedy at law, has suffered irreparable damage, and is likely to continue to be irreparably damaged in an amount unknown by these false, misleading, and confusing actions and practices by defendants. In this case, Swimlane has been injured by the direct diversion of sales from itself, as well as a lessening of the goodwill associated with its products.

50. Defendants' acts will be ongoing unless enjoined by this Court.

## COUNT II

### (Declaratory Judgment of Non-Infringement)

51. Swimlane hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

52. Defendants contend that Swimlane has somehow obtained "through unauthorized access" certain property belonging to defendants, including their "customer list, software code, architecture, algorithms, current platform functionality, data, [and] strategic information," as well as "access" to their "platform." Defendants' counsel contends that Swimlane has obtained improper access to this information and, among other things, is "using it to target and undercut CyberSponse with its own customers."

53. These allegations are false, and Swimlane has not improperly used any information, property, or data in which defendants could claim a legally protectable interest. In truth, Swimlane has developed its own proprietary technology and software without any assistance from defendants.

54. Defendants also claim that Swimlane is infringing, or has infringed, unspecified portions of what they call their "expansive IP portfolio, which has been developed over many years, including patents currently before the USPTO, trade secrets, and copyrights comprising the Platform."

55. Swimlane has not infringed any intellectual property right belonging to defendants, whether that right is characterized as a patent, patent application, trade secret, or copyright.

56. There is an actual and justiciable controversy between Swimlane and defendants over whether Swimlane has improperly obtained, accessed, or otherwise used any property that belong to defendants. Swimlane seeks a declaratory judgment that there has been no improper access or use of any property that is owned by defendants.

57. There is an actual and justiciable controversy between Swimlane and defendants over whether Swimlane has infringed any intellectual property right owned by defendants. Swimlane seeks a declaratory judgment that it has not infringed any right of defendants.

58. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties.

## **COUNT III**

**(Common Law Unfair Competition)**

59. Swimlane hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

60. Defendants interfered with Swimlane's prospective business advantage in a way that transcended the privilege of competition.

61. Defendants caused or are causing the confusion of the public through their distribution of the Letter.

62. Defendants have also wrongly caused or are wrongly causing the direct diversion of sales and goodwill from Swimlane to themselves through their distribution of the Letter.

63. Defendants' actions described above violate Swimlane's common law rights and constitute unfair competition.

64. Defendants committed these acts of unfair competition willfully, maliciously, and in conscious disregard of Swimlane's rights, with the intent to injure Swimlane.

65. As a direct and proximate result of defendants' actions, Swimlane has suffered and continues to suffer irreparable damage to its business, reputation, and goodwill, together with the loss of sales and profits Swimlane would have made but for defendants' actions.

## COUNT IV
### (Defamation)

66. Swimlane hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

67. Defendants made, or caused to be made, statements to third parties that falsely accused Swimlane of intellectual property infringement.

68. As described above, the Letter contained multiple defamatory statements which imputed to Swimlane unfitness for the proper conduct of its lawful business or trade.

69. As described above, Mr. Loomis published a message on Twitter to the public which contained defamatory statements imputing to Swimlane unfitness for the proper conduct of its lawful business or trade.

70. As described above, CyberSponse and/or Mr. Loomis made defamatory statements imputing to Swimlane unfitness for the proper conduct of its lawful business or

1  trade.

2  71. These statements tended to bring Swimlane into disrepute, contempt or
3  ridicule, or to impeach Swimlane's honesty, integrity, virtue, or reputation.

4  72. These statements were false.

5  73. As described above, defendants published the Letter, tweet, and verbal
6  statements to multiple third parties.

7  74. At the time that the Letter and tweet were written, and the verbal statements
8  made, defendants knew that the statements contained therein were false or acted in
9  reckless disregard of whether the statements were true or false, or at a minimum were
10 negligent in failing to determine the truth of the statement.

11 75. The statements constituted defamation per se because they imputed to
12 Swimlane unfitness for the proper conduct of Swimlane's lawful business or trade.

13 76. The statements caused Swimlane to be damaged.

14 77. Defendants acted with evil minds, and with knowing, malicious, and
15 deliberate intent to injure Swimlane.

## COUNT V

### (Intentional Interference with Business Expectancies)

78. Swimlane hereby realleges and incorporates by reference the preceding
paragraphs of this Complaint as though fully set forth herein.

79. Swimlane had a business expectancy with a potential purchaser and OEM
vendor.

80. Defendants knew about these business expectancies.

81. Defendants intentionally interfered with the Swimlane's business
expectancies with the potential customer and OEM vendor by falsely accusing Swimlane
of intellectual property infringement, which caused the termination of those relationships
or expectancies, and kept them from being realized.

82. On information and belief, defendants interfered with other business
expectancies by falsely accusing Swimlane of intellectual property infringement in an

attempt to persuade potential customers not to do business with Swimlane.

83. Defendants' conduct was improper and wrongful.

84. Swimlane suffered damage caused by the breach or termination as a result of defendants' conduct.

## COUNT VI

### (Unjust Enrichment)

85. Swimlane hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86. In distributing the Letter to Swimlane's customers and potential customers, defendants made false and misleading material representations of fact, in association with defendants' goods and services, which misrepresent the nature, qualities, and origin of the defendants' services and otherwise confuse the public and lead the public to believe erroneously that defendants are affiliated with Swimlane. In particular, defendants falsely claimed that Swimlane infringed the intellectual property owned by defendants.

87. In distributing the letter, defendants have been unjustly enriched, and Swimlane has been impoverished, because defendants' false statements caused the direct diversion of sales and goodwill from Swimlane to defendants.

88. Swimlane has suffered an impoverishment that is a direct and proximate result of defendants' enrichment.

89. There is no justification for defendants to retain their benefit at Swimlane's expense.

90. As a direct and proximate result of defendants' conduct, Swimlane has suffered damages.

### PRAYER FOR RELIEF

Wherefore, Swimlane prays for the following relief:

A. For a preliminary and permanent injunction forcing defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with

defendants for their benefit,

    i.      to refrain from any and all use, disclosure, or dissemination to others of the Letter;

    ii.      to refrain from any and all statements, assertions, or representations to others that Swimlane's intellectual property and/or product is owned or was created by defendants;

    iii.      to refrain from any and all statements, assertions, or representations to others that defendants are affiliated, connected, or associated with Swimlane; and

    iv.      to act or refrain from acting in any other manner as this Court deems appropriate.

    B.      For judgment in favor of Swimlane and against defendants on the claims set forth above;

    C.      For a declaratory judgment that Swimlane has not improperly obtained, accessed, or otherwise used any property that belongs to defendants, or infringed any intellectual property right belonging to defendants;

    D.      For direct, special, compensatory, and consequential damages in an amount to be proven at trial;

    E.      For revenues and profits obtained by defendants which should be awarded to Swimlane in an undetermined amount;

    F.      For treble damages;

    G.      For punitive damages in an amount sufficient to punish and deter defendants and others from similar misconduct in the future;

    H.      For costs and attorneys' fees incurred by Swimlane; and

    I.      For such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Swimlane hereby demands a jury trial on all issues in this litigation that are triable to a jury.

1 | DATED this 13th day of February, 2017.

SNELL & WILMER L.L.P.

By: /s/ Rachael Peters Pugel
Joseph G. Adams (#018210)
Rachael Peters Pugel (#032626)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

25741492