**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810     Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
Brian J. Hembd, #029817
admin@wb-law.com
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Swimlane, LLC, a Delaware limited liability company,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CyberSponse, Inc., a Florida corporation, Joseph Loomis and Kimberly Loomis, husband and wife,**<br><br>**Defendants.** | Case No. 2:17-cv-00438-DJH<br><br>**DEFENDANTS' MOTION FOR DISQUALIFICATION OF PLAINTIFF'S COUNSEL**<br><br>(Assigned to the Honorable Diane Humetewa) |

Comes Now Defendants, who file this Motion to Disqualify Plaintiff's Counsel. Plaintiff's counsel, Snell & Wilmer, should be disqualified from representing Plaintiff Swimlane, LLC ("Plaintiff" or "Swimlane") against Defendants CyberSponse, Inc., Joseph Loomis, and Kimber Loomis ("Defendants") because: (1) CyberSponse was a former client of Snell & Wilmer in a substantially related matter; (2) CyberSponse was a prospective client of Snell & Wilmer in a substantially related matter; or (3) Snell & Wilmer may be called as witnesses in the current case so the advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation.

## I. FACTUAL BACKGROUND

The issue in this Motion is whether Snell & Wilmer should be disqualified from representing Plaintiff against CyberSponse because (1) CyberSponse was a former client; (2) CyberSponse was a prospective client; or (3) Snell & Wilmer may be called as witnesses in the current case. These bases for disqualification are established through the following contacts and communication made between CyberSponse and Snell & Wilmer. The following evidence comes from Snell & Wilmer's own communications and billing records, disclosed in response to CyberSponse's Subpoena to Snell & Wilmer:

- On March 10, 2014 Snell & Wilmer met with Cody Wamsley, Esq. of CyberSponse to discuss CyberSponse's patent strategy. **Exhibit B**, SW000117-19; **Exhibit C,** SW000046.

- On March 28, 2014, Damon Boyd, Esq. of Snell and Wilmer had nearly an hour long conversation with CyberSponse related to their "potential engagement." **Exhibit A**, SW000033.

- On March 31, 2014, Damon Boyd, Esq. of Snell and Wilmer communicated with Chris Colyer of CyberSponse. **Exhibit A**, SW000033.

- On March 31, 2014, David Caplan, Esq. of Snell and Wilmer reviewed unspecified documents and emailed with CyberSponse. **Exhibit A**, SW000033.

- On May 9, 2014, Patrick Fowler, Esq. and David Caplan, Esq. of Snell and Wilmer attended lunch with the "CyberSponse team" and visited the CyberSponse offices. This meeting included discussions, "**demonstration**," and a tour of CyberSponse. This meeting lasted hours. **Exhibit A**, SW000033 (emphasis added).

- On December 12, 2014, Patrick Fowler, Esq. of Snell and Wilmer had a telephone conference with Cody Wamsley, Esq. of CyberSponse regarding litigation hold issues. **Exhibit A**, SW000033.

. . .

2

- Ryan Ricks also assisted CyberSponse as a business mentor in connection with the Invest Southwest conference held in Scottsdale, Arizona. **Exhibit D**, SW000058.

The foregoing was produced directly by Snell & Wilmer. CyberSponse recalls further detail regarding the foregoing, and additional meetings and interactions CyberSponse had with Snell & Wilmer. Those were memorialized in an email sent from CyberSponse to Snell & Wilmer on January 30, 2015, which recounts the following:

> 3/10/14 Meeting with Damon Boyd and Chris Colyer. The intent of this meeting was to discuss engaging with Snell to represent us on intellectual property matters. There was significant disclosure to both Boyd and Colyer of confidential IP and business information in anticipation of forming an attorney-client relationship. I am still in possession of a copy of one of our confidential, pending provisional patents that contains Boyd's handwritten notes that he made during the meeting as we discussed IP strategy for our company in light of our confidential IP. It was understood by CyberSponse that this meeting would be held in confidence and was a consultation for a near-term attorney-client relationship. It was also understood that the Snell attorneys present had the same understanding. This same understanding extended to all subsequent meetings and conversations.
>
> 4/4/14 Call with Ryan Ricks
> This call was a follow-up to the previous meeting with Boyd and Colyer where additional confidential IP and business information was disclosed in anticipation of engaging Snell & Wilmer to represent CyberSponse on IP matters.
>
> 5/9/14 On-site meeting with David Caplan and Pat Fowler
> David Caplan and Pat Fowler came on-site to CyberSponse's facilities and were provided with a product demonstration. The product demonstrated to Caplan and Fowler was still in development, not available to the general public, and contained elements that are still in development and held as secret. The product roadmap and functionality were disclosed as well as business plans. The intent of the meeting was to begin discussions on a possible business partnership between Snell & CyberSponse, as well as to reopen a dialog on possible representation.
>
> 6/30/14 Call with Brett Johnson and Chris Colyer
> We had an extended phone call regarding government contract matters and were seeking advice on how to proceed. Confidential business, IP, and government contracts information was disclosed to Johnson and Colyer in anticipation of engaging Snell in representing us with government contract issues.

. . .

> 12/12/14 Call with Pat Fowler
> We had a brief phone call with Pat Fowler regarding product direction and confidential development of IP. Pat was asked when he would like to see a demo of the advancements that CyberSponse had made over the last few months. He stated that he would like to see it after the first of the year.
>
> 1/28/14 Brief in-person chat with Pat Fowler
> I was at your office on Wednesday and had a brief discussion with Pat regarding Swimlane. I asked him if he had heard of the company and he stated that he did not. He then asked what they did, to which I responded, "exactly what we do." During this conversation, confidential business information may have been disclosed. Pat also told me that if we ever needed his help to call him. I left with the belief that Snell likely did not represent Swimlane and that we might still enter a full engagement with the firm.

**Exhibit E**: Email with Snell & Wilmer re conflict, 3-4. Based on the foregoing, it is clear that Snell & Wilmer had established an attorney-client relationship with CyberSponse, or at the very least a prospective relationship. That relationship involved the very same issues at stake in the current litigation and included numerous disclosures, including CyberSponse's intellectual property, patents, potential patents, a demonstration of the product, the product's roadmap and functionality, and CyberSponse's business plan. **Exhibits A-C**, **E**. Thus, Snell & Wilmer cannot continue to represent Swimlane against CyberSponse.

## II. LEGAL ANALYSIS

### A. CyberSponse Was A Former Client Of Snell & Wilmer And Therefore Snell & Wilmer Cannot Represent Swimlane In This Substantially Related Matter

Arizona Ethical Rule 1.9(a) states that:

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

As has been stated with a measure of rhetorical elegance by Judge David Alan Ezra in this very Court, for a conflict to exist warranting disqualification pursuant to Ethical Rule 1.9, the moving party must show: (1) the existence of an attorney-client relationship; (2) that the former representation was "the same or substantially related" to the current litigation; and (3) that the current client's interests are "materially adverse" to the former client's interests. *Roosevelt Irr.*

4

*Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d 929, 945 (D. Ariz. 2011) *citing Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723, 726–27 (Ariz.Ct.App.1989). CyberSponse can show each here.

        *i.    CyberSponse established an attorney-client relationship with Snell & Wilmer.*

"An attorney-client relationship is said to exist when the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." *Alexander v. Superior Court In & For Maricopa Cty.*, 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984) (internal citation omitted). There is no question that CyberSponse divulged confidences and secrets to Snell & Wilmer. CyberSponse disclosed intellectual property, patents, potential patents, a demonstration of the product, the product's roadmap and functionality, CyberSponse's business plan, and CyberSponse discussed their patent strategy with Snell & Wilmer. *See* section I, supra.

CyberSponse disclosed the above with the intent to secure legal advice from Snell & Wilmer. At all times, it was understood that these disclosures were made confidentially, under the protection of attorney-client privilege. **Exhibit E**, 3. Snell & Wilmer even provided handwritten notes on a confidential, pending provisional patent during a meeting with CyberSponse as they discussed IP strategy. *Id*; **Exhibit F**.

It is true that CyberSponse did not sign a fee agreement with Snell & Wilmer, however, this is not definitive, nor required to form an attorney-client relationship. *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 148, ¶ 10, 24 P.3d 593, 595–96 (2001) ("The law has never required that the attorney-client relationship must be initiated by some sort of express agreement, oral or written.").

. . .

. . .

5

### ii. *Snell & Wilmer's former representation was substantially related to the current litigation.*

In the current litigation, Swimlane is seeking a declaration that they did not infringe on any intellectual property of CyberSponse. Complaint, (Doc. 1), ¶¶ 51-58. This would include infringing on any of the intellectual property, patents, potential patents, the product that was demonstrated to Snell & Wilmer, the product's roadmap and functionality, and CyberSponse's business plan, all of which were provided to Snell & Wilmer before their filing the current matter. *See* Section I, supra.

Swimlane is also claiming common law false advertising, unfair competition, and defamation based on the theory that CyberSponse distributed a cease and desist letter that falsely claimed that Swimlane had misappropriated CyberSponse's intellectual property. *See generally*, Complaint, (Doc. 1). Thus, whether Swimlane misappropriated CyberSponse's intellectual property or not is directly at issue. Therefore, Snell & Wilmer's receipt and review of CyberSponse's intellectual property is substantially related to the current matter.

### iii. *Swimlane's interests are materially adverse to CyberSponse's interests.*

It cannot be disputed that Swimlane's interests are adverse to CyberSponse in this Complaint, where Swimlane is currently suing CyberSponse.

**B. CyberSponse Was At A Minimum A Prospective Client Of Snell & Wilmer And Therefore Excluded From Representing Swimlane Pursuant To Ethical Rule 1.18**

There is no doubt that, at a minimum, CyberSponse was a prospective client of Snell & Wilmer. ER 1.18 cmt. 2 states, "A person becomes a prospective client by consulting with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter." Snell & Wilmer's own time records show that they had nearly an hour long conversation with CyberSponse related to their "potential engagement" and that they spent .8 of an hour to "Review and multiple email correspondence with prospective clients and referral sources, including CyberSponse and Terra Verde Services." **Exhibit A** (emphasis added). It cannot be argued that

6

the hours spent by Snell & Wilmer's partners discussing their "potential engagement," following up on those discussions, emailing CyberSponse as a "potential client[]," meeting with CyberSponse for lunch, touring CyberSponse's offices, and discussing CyberSponse's patent strategy are anything short of consulting with a potential client about the possibility of forming an attorney-client relationship. **Exhibit A**.

According to ER 1.18(b) "(b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as would be permitted by ER 1.6 or by ER 1.9 with respect to information of a former client." ER 1.18(c) continues:

> A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

Here, Snell & Wilmer have lawyers who are subject to ER 1.18(b) because they have "learned information from a prospective client" – CyberSponse. ER 1.18(b). Thus, according to ER 1.18(c) their firm cannot "represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter." ER 1.18(c). Here, this is precisely what Snell & Wilmer is attempting to do. See section II(A)(i and ii) herein. The ethical rules expressly prohibit it.

**C. Snell & Wilmer Cannot Represent Swimlane As They Are Potential Witnesses In This Dispute**

"The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation." *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985). Here, CyberSponse believes that it is possible that CyberSponse's disclosures made to Snell & Wilmer may have been made to their current client in this lawsuit – Swimlane. Currently, Snell

7

& Wilmer has taken the position that their communications with Swimlane are protected by the attorney-client privilege and Snell & Wilmer has, therefore, refused to disclose any such communications. **Exhibit G**, 4:12-5:17. Thus, the possibility, however remote, of these communications existing cannot be eliminated. If it turns out that such disclosures were made, Snell & Wilmer would be both advocate and witness. Under *Prantil*, "The advocate-witness rule generally admits of only one solution to avoid the improprieties inherent in advocate testimony. Attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness, and promptly withdraw from the conflicting role." *Id*. at 553.

### III. REQUEST FOR STAY OF DISCOVERY PENDING RULING ON MOTION TO DISQUALIFY

Pursuant to the Court's Rule 16 Scheduling Order, Defendants hereby submit a request for stay of discovery pending a ruling on this Motion to Disqualify. Rule 16 Scheduling Order, (Doc. 35), 5 ¶ 9. "A stays [sic] of proceedings in federal court, including a stay of discovery, is committed to the discretion of the trial court." *IPVX Patent Holdings, Inc. v. 8X8, Inc.*, No. C 13-01707 SBA, 2013 WL 6000590, at *1 (N.D. Cal. Nov. 12, 2013) (citing *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir.1987) and *Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir.1988)). The trial court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "specifying [the] time and place ... for ... discovery." Fed. R. Civ. P. 26(c)(1).

In *IPVX Patent Holdings, Inc.*, 2013 WL 6000590, at *2, the court found that good cause existed for the court to stay discovery until the Defendant's Motion to Disqualify was resolved. The court reasoned that staying discovery was appropriate because it (1) would avoid unnecessary expense, (2) "prevent Plaintiff's counsel from obtaining technical and financial information about Defendant before a determination is made as to whether Plaintiff's counsel may continue to represent Plaintiff," and (3) a stay was appropriate because Plaintiff had not shown how a limited stay would prejudice Plaintiff. All three apply here as well.

. . .

First, though some initial discovery has occurred, further discovery is likely. There have been no depositions taken in the case. Plaintiff and other third parties have withheld documents on the basis of the need for a confidentiality order[1]. Finally, the parties are currently disputing the refusal of Plaintiff to disclose certain documents. Thus, significant discovery is ongoing.

Second, this case involves the intellectual property and trade secrets of both party entities. Plaintiff is seeking a declaration that it did not infringe on CyberSponse's intellectual property. Therefore, sensitive intellectual property is at issue. None has been disclosed because there is no confidentiality order in place[1]. Just as in *IPVX Patent Holdings, Inc.*, this Court should eliminate the possibility that Plaintiff's counsel obtains such information prior to ruling on whether or not they can remain Plaintiff's counsel. *Id.*

Finally, a stay is appropriate as it would not prejudice Plaintiff. If the motion is granted, Plaintiff will need to obtain new counsel and a stay would actually have helped Plaintiff avoid further unnecessary expense. If the motion is denied, there is no prejudice to Plaintiff for a short stay on discovery in the meantime. Defendants are not aware of any outstanding discovery from Plaintiff, who claims that "most of the discovery regarding its claims consists of documents and information within the Defendants' control or possession." Joint Case Management Report, (Doc. 29), 6:7-8.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court disqualify Snell & Wilmer from representing Swimlane in this matter. Defendants also request that the Court stay discovery pending its ruling on this motion.

. . .

. . .

. . .

---

[1] Defendants' counsel provided an initial draft of a Protective Order to Plaintiff's counsel on May 19, 2017 and has not yet received any comments or changes thereto.

**RESPECTFULLY SUBMITTED** June 28, 2017.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Brian J. Hembd, Esq.
Wilenchik & Bartness, P.C.
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2017, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

*/s/ Wendy L. Echols*