Patricia Lee Refo (#017032)
Creighton P. Dixon (#033298)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: prefo@swlaw.com
        cdixon@swlaw.com
Attorneys for Non-Party Snell & Wilmer, LLP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swimlane, LLC, a Delaware limited liability company, | No. 2:17-cv-00438-DJH |
| Plaintiff, | **SNELL & WILMER LLP'S RESPONSE TO DEFENDANTS' MOTION FOR DISQUALIFICATION OF PLAINTIFF'S COUNSEL** |
| v. | |
| CyberSponse, Inc., a Delaware corporation; Joseph Loomis and Kimberly Loomis, husband and wife, | **(Assigned to the Honorable Diane Humetewa)** |
| Defendants. | **(Oral Argument Requested)** |

Motions to disqualify are disfavored, and Defendants'[1] Motion for Disqualification of Plaintiff's Counsel ("the Motion") offers no evidence to support – let alone compel – this drastic relief. CyberSponse "shopped" Snell & Wilmer three years ago as one of several law firms CyberSponse claimed to be considering. CyberSponse then expressly declined to retain Snell & Wilmer. As set forth below, no attorney-client relationship was ever formed and even as a prospective client, CyberSponse did not give Snell & Wilmer any confidential information that could be "significantly harmful" to CyberSponse in this case. CyberSponse offers nothing in support of its motion other than inadmissible hearsay and vague, unsupported assertions by its lawyers regarding communications that allegedly

---

[1] All of the defendants purport to join in the Motion for disqualification, but the Motion does not suggest why Joseph or Kimberly Loomis could be entitled to relief.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

took place.  CyberSponse has not met its burdens on the Motion, and Snell & Wilmer respectfully requests that it be denied.

## **Factual Background**

CyberSponse's Motion omits a key material fact:  CyberSponse expressly declined – in writing – to retain Snell & Wilmer as its counsel more than three years ago.  On April 8, 2014, Cody Wamsley of CyberSponse wrote to Damon Boyd, Chris Colyer and Ryan Ricks[2] at Snell & Wilmer, saying:

> Thank you again for your patience during this process.  We have decided to go with a different firm as, unfortunately, cost was the driving factor.  I have always personally been impressed with Snell & Wilmer and am glad to have had the opportunity to explore the possibility of working with all of you.

Exhibit H at 1.

Consistent with the fact that CyberSponse did not retain the firm, Snell & Wilmer never opened a billing number for CyberSponse and never entered into an engagement letter with CyberSponse.  Both steps are required under Snell & Wilmer policy before a lawyer can represent a client.  Exhibit I at ¶¶ 3-4.  Snell & Wilmer never billed CyberSponse for any legal services.  *Id.* at ¶ 5.  No Snell & Wilmer lawyer received confidential information from CyberSponse, nor information that could be "significantly harmful" to CyberSponse in litigation.  Exhibits J at ¶ 8, K at ¶ 9, and L at ¶ 9.  No Snell & Wilmer attorney provided legal services to CyberSponse and no attorney-client relationship ever was created or existed.  Exhibits J at ¶ 7, K at ¶ 8, and L at ¶ 8.

CyberSponse also makes two material factual errors in the Motion when it describes Snell & Wilmer's documents:

1.  CyberSponse claims that "[o]n March 31, 2014, Damon Boyd, Esq. of Snell & Wilmer communicated with 'Chris Colyer of CyberSponse.'"  Motion at

---

[2] The Motion makes a reference to Ryan Ricks providing assistance to "CyberSponse as a business mentor in connection with the Invest Southwest conference held in Scottsdale, Arizona," but does not specifically claim he received any information.  Motion at 3:1-2.

4836-8909-9083

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

2:15-16. Chris Colyer is an attorney for Snell & Wilmer and never worked at CyberSponse. Exhibits J at ¶ 6 and K at ¶ 7.

2. The Motion claims that on March 28, 2014 Damon Boyd had "nearly an hour long conversation with CyberSponse." Motion at 2:12-14. The cited exhibit states only that there was "follow up," and other exhibits demonstrate that the follow up was by email. Exhibits A, C.

After CyberSponse first suggested a conflict of interest on or about January 29, 2015, Snell & Wilmer timely instituted an "ethical wall" in an abundance of caution and screened every Snell & Wilmer lawyer CyberSponse identified from the firm's work for Swimlane. *See* Exhibits E[3] and M. That ethical wall remains in place.

## Argument

Arizona courts disfavor motions to disqualify.[4] *See, e.g.*, *Alexander v. Superior Court,* 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984) ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent . . .") (citations omitted) (cited in Motion at 5:8-9); *Gomez v. Superior Court*, 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986) ("We also view with suspicion motions by opposing counsel to disqualify a party's attorney based upon conflict of interest or appearance of impropriety . . ."). With this standard in mind, CyberSponse bears a heavy burden to establish that Snell & Wilmer should be disqualified. *See Alexander*, 141 Ariz. at 161, 685 P.2d at 1313 ("The burden should be upon the moving party to show sufficient

---

[3] Snell & Wilmer cites this document only to establish the date upon which it was sent. The contents of the document are hearsay and should be stricken. *See infra* Section I.

[4] "The United States District Court for the District of Arizona has adopted the Arizona Rules of Professional Conduct as its ethical standards. . . . Accordingly, this Court applies the Arizona ethical rules when evaluating motions to disqualify counsel." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011) (citations omitted). However, even a violation of an Ethical Rule does not require automatic disqualification. *See Research Corp. Techs. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996) ("Because the Ninth Circuit has not expressly adopted a rule of automatic disqualification, and based on the well-reasoned decisions disfavoring a rule requiring automatic disqualification, the Court finds that the better rule is to consider the facts and circumstances of each case, including the particulars of the ethical violation itself, in determining whether the harsh sanction of disqualification is warranted.").

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

reason why an attorney should be disqualified from representing his client."). CyberSponse has failed to meet any aspect of this burden.

**I. CyberSponse relies on inadmissible hearsay and it should be stricken.**

At the outset, under Local Rule of Civil Procedure 7.2(m)(2), Snell & Wilmer moves to strike the hearsay statements on which the Motion depends.[5] CyberSponse does not provide a single declaration from any witness (let alone a witness with personal knowledge) in support of its motion. With the exception of materials created by Snell & Wilmer (*e.g.*, time records or correspondence from Snell & Wilmer attorneys), CyberSponse's Motion relies exclusively upon evidence that is inadmissible. Fed. R. Evid. 802 ("Hearsay is not admissible . . ."). Specifically, CyberSponse relies upon multiple emails authored by a single CyberSponse employee. One self-serving email from CyberSponse's in-house lawyer, prepared in anticipation of litigation, is the hearsay core of CyberSponse's claims. *See, e.g.*, Motion at 3:5-26, 4:1-8 (relying upon email authored by Cody Wamsley, of CyberSponse, to purport to prove CyberSponse's vague assertions about discussions with Snell & Wilmer attorneys). A party cannot send a position statement in anticipation of litigation and then attempt to offer that statement into evidence to prove the truth of the claims set forth in the statement. All Wamsley-authored emails offered by CyberSponse should be stricken as hearsay.

**II. CyberSponse did not establish any attorney-client relationship with Snell & Wilmer.**

CyberSponse roots its argument to disqualify on Ethical Rule ("ER") 1.9,[6] which relates to former clients. ER 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in

---

[5] The inadmissible evidence is those portions of Exhibits B, C, D, and E that were authored by Cody Wamsley of CyberSponse.

[6] Rule 42 "Arizona Rules of Professional Conduct," Rules of the Arizona Supreme Court.

4836-8909-9083

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

writing." *See also Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 376, 93 P.3d 1086, 1092 (Ct. App. 2004) ("But the Preamble [of the Rules of Professional Conduct] also states that a violation of an ethical rule 'does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation,' and warns that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'") (citation omitted).  As the Motion indicated, it is a three-part test to determine if counsel should be disqualified pursuant to ER 1.9(a): "For a conflict to exist pursuant to this provision, the moving party must show: (1) the existence of an attorney-client relationship; (2) that the former representation was 'the same or substantially related' to the current litigation; and (3) that the current client's interests are 'materially adverse' to the former client's interests." *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929, 945 (D. Ariz. 2011) (citing *Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723, 726–27 (Ct. App. 1989)) (cited in Motion at 4:26-5:1-3).  CyberSponse has not satisfied its burden.

> *a. There was not an attorney-client relationship between Snell & Wilmer and CyberSponse.*

On the facts here, CyberSponse has not – and cannot – establish that any attorney-client relationship existed.  To the contrary, CyberSponse informed Snell & Wilmer that CyberSponse would NOT retain Snell & Wilmer and, instead, "decided to go with a different firm."  Exhibit H at 1.  It is difficult to imagine a clearer statement of CyberSponse's intent.

Arizona applies a subjective test to determine if there was an attorney-client relationship, and the Court must look to "the nature of the work performed and to the circumstances under which the confidences were divulged." *Alexander v. Superior Court,* 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984) (citations omitted).  Arizona courts have also recognized that the attorney must consent to the formation of the relationship. *Simms v. Rayes*, 234 Ariz. 47, 50, 316 P.3d 1235, 1238 (Ct. App. 2014) ("An attorney-client relationship exists when a person has manifested to a lawyer his intent that the lawyer

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1  provide him with legal services and the lawyer has manifested consent to do so . . .")

2  (citations omitted); *Paradigm Ins. Co. v. Langerman Law Offices*, P.A., 200 Ariz. 146,

3  149, 24 P.3d 593, 596 (2001) ("A relationship of client and lawyer arises when: (1) a

4  person manifests to a lawyer the person's intent that the lawyer provide legal services for

5  the person; and ... (a) <u>the lawyer manifests to the person consent to do so</u>") (citing

6  *Restatement (Third) of the Law Governing Lawyers* § 14) (emphasis added) (cited in

7  Motion at 5:21-22).

8  　　　CyberSponse has failed to show that an attorney-client relationship was formed.

9  First, the evidence establishes that CyberSponse did not intend to form an attorney-client

10  relationship.　Indeed, CyberSponse expressly told Snell & Wilmer in writing that

11  CyberSponse was NOT hiring the firm.　Exhibit H.　CyberSponse relies on a January 30th,

12  2015 email written in anticipation of litigation by its in-house lawyer Cody Wamsley.

13  Motion at 3:6-26, 4:1-7.　As discussed above, this is hearsay and should be stricken.　In

14  any event, the 2015 hearsay Wamsley email conflicts directly with the "we are not

15  retaining you" 2014 Wamsley email – which Snell & Wilmer properly offers as the

16  statement of an opposing party under Fed. R. Evid. 801(d)(2).　Having expressly declined

17  to form an attorney-client relationship with Snell & Wilmer, CyberSponse cannot now

18  claim that it intended to retain Snell & Wilmer.

19  　　　Second, Snell & Wilmer never manifested consent to the formation of an attorney-

20  client relationship.　This is supported not only by the declarations of relevant attorneys, all

21  of whom affirm that no attorney-client relationship was created or existed, but also by the

22  absence of any "client" records, an engagement letter, an invoice, or any other indicia

23  typical of the attorney-client relationship.　*See* Exhibit I at ¶ 5.

24  　　　Finally, there is no evidence that Snell & Wilmer performed work for

25  CyberSponse.　The only suggestion of work is the illegible notes on a redacted document,

26  which cannot be construed as legal advice representing the formation of an attorney-client

27  relationship.　Moreover, as set forth in the Declaration of Damon Boyd, attached as

28  Exhibit J, he did not review or provide advice regarding the redacted document, nor did he

retain a copy of the document. Exhibit J at ¶ 4 ("Nor did Mr. Wamsley give me a copy of CyberSponse's provisional patent, . . . and I did not leave Rosie McCaffrey's with a copy of the document. I do not recall reading the provisional patent that was in Mr. Wamsley's possession. I did not know then, and no not know now, the contents of that provisional patent.").

In summary, there is no evidence that an attorney-client relationship existed between CyberSponse and Snell & Wilmer. No work was performed, and no confidential communications were exchanged. Instead, CyberSponse expressly advised that it would not form an attorney-client relationship with Snell & Wilmer.

> *b. Even if CyberSponse had been a client – and it was not – CyberSponse has not established that the representation was substantially related to the current litigation.*

A lawyer is prohibited from being adverse to a former client when a matter is "substantially related" to the prior representation. Comment 3 to ER 1.9 provides in part:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

Here, CyberSponse offers no competent evidence that it gave any confidential information to anyone at Snell & Wilmer. And, even if the Court considers the unsworn, self-serving hearsay statements CyberSponse has submitted as "evidence", they provide only vague and nonspecific claims that fail to describe the matter. *See, e.g.*, Motion at 3:14-17 (alleging "This call was a follow-up to the previous meeting with Boyd and Colyer where additional confidential IP and business information was disclosed in anticipation of engaging Snell & Wilmer to represent CyberSponse on IP matters." but providing no details). CyberSponse has not provided any detail about what it claims was disclosed to the Snell & Wilmer attorneys because, as the declarations from the Snell & Wilmer attorneys establish, CyberSponse never disclosed any confidential information to

4836-8909-9083

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

them. In sum, there is no evidence upon which this Court could make a factual finding that this case involves matters "substantially related" to the supposed prior representation.

Because CyberSponse has not met its burden to show that an attorney-client relationship ever existed, much less that the representation was substantially related to this matter, its Motion to disqualify Snell & Wilmer as CyberSponse's alleged former counsel should be denied.

**III.   CyberSponse has not established that Snell & Wilmer can be disqualified under the rule governing prospective clients.**

Unable to establish that it was ever a client of Snell & Wilmer, CyberSponse alternatively claims that Snell & Wilmer should be disqualified under the rule addressing a lawyer's duty to a prospective client. ER 1.18.  Motion at 6:20-26, 7:1-20.  That rule prohibits a lawyer from being adverse to a prospective client "in the same or a substantially related matter ***if*** the lawyer received information from the prospective client that could be ***significantly harmful***" to the prospective client in the pending matter.  ER 1.18(c) (emphasis added); *see also id.*, cmt. 1 ("Hence, prospective clients should receive some but not all of the protection afforded clients.").

As noted above, CyberSponse has made no showing that this case is the same or substantially similar to what it considered retaining Snell & Wilmer for three years ago, beyond conclusory claims that it all involved intellectual property.  *See, e.g.,* Motion at 4:10-14. The fact that any prior discussions may have related to the same general area of law is insufficient absent the requisite showing that the matters, in fact, were substantially related.   For that reason alone, CyberSponse's motion should be denied.

Beyond that, CyberSponse does not even attempt to meet its burden to establish that someone at Snell & Wilmer received information from CyberSponse three years ago that could be "significantly harmful" to CyberSponse in this matter. *See* Motion at 6:18-26, 7:1-20. The moving party "bears the burden of persuading the tribunal that the lawyer received such information." *Restatement (Third) of the Law Governing Lawyers* § 15,

- 8 -

4836-8909-9083

cmt. C.[7]

A motion for disqualification based on a prospective-client relationship is appropriate only:

> when the movant, generally well-grounded in the written record, satisfies its burden of proving that the matter of the consultation and the matter then adverse are "the same or substantially related" and, at the same time, that the information the lawyer received during the consultation is "significantly harmful" to the former prospective client in the now adverse matter.

*O Builders & Assocs., Inc. v. Yuna Corp. of NJ*, 19 A.3d 966, 977 (N.J. 2011); *see also B.F. Goodrich Co. v. Formosa Plastics Corp.*, 638 F. Supp. 1050, 1052-3 (S.D. Tex. 1986) ("That is, the [] firm should be disqualified if, but only if, [moving party] can prove that the firm actually received confidential information which could now be used to the detriment of [moving party]. The Court concludes that [moving party] has failed to meet that burden of proof.").

To satisfy this burden, CyberSponse must not only show that the specific information was given to someone at Snell & Wilmer, but also must provide specific evidence to establish the "significantly harmful" nature of the information. *See State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 396 (Mo. Ct. App. 2011) ("The party seeking disqualification of an attorney has the burden of persuasion and proof. . . . A former prospective client has the same burden. . . . in contrast to Rule 4–1.9 proceedings, specific evidence of the nature and substance of the information is required in Rule 4–1.18 proceedings to establish that it is 'significantly harmful;' speculative or hypothetical claims of harm are not enough.") (citations omitted); *Bernacki v. Bernacki*, 1 N.Y.S. 3d 761, 763-4 (N.Y. Sup. Ct. 2015) ("No information is presented in this motion that would permit the court to conclude that the information allegedly revealed was of the type referred to in Rule 1.18. Plaintiff's reference to the information as 'confidential,' without

---

[7] Arizona courts have looked to the *Restatement (Third) of the Law Governing Lawyers*. *See Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 149, 24 P.3d 593, 596 (2001).

4836-8909-9083

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

more, is insufficient. . . . Similarly, the court cannot conclude that the information 'could be significantly harmful' to plaintiff in this matter as the court is told no more about the information other than it was 'specific and detailed.'").

In *O Builders & Assoc., Inc.*, the New Jersey Supreme Court addressed a disqualification motion under circumstances similar to this case. 19 A.3d at 966. At issue in *O Builders & Assoc., Inc.* was a meeting between an attorney, a prospective client, and the prospective client's business advisor. *Id*. at 969-72. While the parties agreed that the possibility of the attorney representing the prospective client was discussed (and the representation was declined by the attorney the next day), the parties disagreed as to what else was discussed. *Id*. The attorney claimed nothing "further of substance" was discussed, while the prospective client alleged "that matters concerning [the prospective client]'s 'business, pending legal disputes, finances, and other confidential matters' were discussed, albeit without providing any details, specificity or corroboration thereof." *Id*. at 970.

The court emphasized that disqualification is permissible only when the moving party offers facts to prove "that the matter of the consultation and the matter then adverse are 'the same or substantially related' and . . . that the information the lawyer received during the consultation is 'significantly harmful' to the former prospective client in the pending matter." *Id.* at 976-7.

> [I]n order for information to be deemed "significantly harmful" within the context of *RPC* 1.18, disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and - specific.

*Id.* at 976.

The court found that the movant had failed to satisfy her burden of proof.[8] The

---

[8] The court acknowledged the "theoretical quandary" relating to movant's need to disclose the claimed confidential information in order to support the motion, but found that this did not excuse the movant's failure of proof. *Id*. at 977-8. As the court explained, the

4836-8909-9083

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

prospective client's "bald and unsubstantiated assertions," stood in "stark contrast" to the details and documents provided by the attorney. *Id.* at 978. Like CyberSponse, the movant supported her motion with only vague and conclusory assertions that she had "disclosed business, financial and legal information related to [defendant] and other matters to [the attorney] that she believed to be related to the current law suit brought by [plaintiff], including discussion of . . . two then-pending cases, . . . and other general information about the circumstances of her business and legal affairs . . . ." *Id.* at 978 (alternations in original omitted). The court held this to be utterly insufficient.

Similarly here, CyberSponse has failed to show that this matter is substantially related to any disclosure to or communications with Snell & Wilmer three years ago before CyberSponse decided to retain a different firm. The only communications in the record relate to Snell & Wilmer's capabilities as a firm, and who would be available to work on CyberSponse matters, if the firm was hired, and at what rates.

Moving to the second step,[9] CyberSponse offers no competent evidence regarding the substance of any communication with Snell & Wilmer, much less proof that those communications could somehow be "substantially harmful" to CyberSponse three years later. Further, even if the Court were to admit and consider the emails authored by CyberSponse, they offer no evidence at all that any specific information was disclosed to a Snell & Wilmer that could be "significantly harmful" three years later to CyberSponse in this case. Hearsay assertions that unspecified "confidential" information was disclosed are insufficient to cause the draconian result of disqualification, especially in the face of the particularized declarations from Snell & Wilmer lawyers that they received no

premise of the motion was that the lawyer ***already knew*** the allegedly confidential information and, in any event, other procedures could be used to protect the confidentiality of any information. *Id*.

[9] CyberSponse's Motion argues that because Snell & Wilmer "'learned information from a prospective client,'" Snell & Wilmer must be disqualified. Motion at 7:15-20. This skips a critical step in the analysis of what type of information could disqualify an attorney following a communication with a prospective client. ER 1.18(c) limits disqualification to situations when an attorney received information that would be significantly harmful to the prospective client. Instead, CyberSponse conflates any "information," as requiring disqualification. That is simply not what ER 1.18 provides.

4836-8909-9083

information that was confidential or that could be "significantly harmful" to CyberSponse. Exhibits J at ¶ 8, K at ¶ 9, and L at ¶ 9; *see O Builders & Assoc., Inc.*, 19 A.3d at 979 ("[b]ecause 'disqualification of counsel is a harsh discretionary remedy which must be used sparingly, . . . defendant's application must be subject to careful scrutiny. Against that necessarily high standard, defendant's motion to disqualify counsel perforce must fail.") (citations and alterations in original omitted); *Bernacki,* 1 N.Y.S.3d at 763 (denying motion to disqualify where prospective client claimed information was "'confidential,' without more").

It is also worth noting that Snell & Wilmer took the additional step of "screening" the lawyers CyberSponse identified from any involvement with Swimlane matters.[10] All of Snell & Wilmer's legal personnel were instructed "NOT to discuss any aspect of the firm's representation of Swimlane with the Walled Attorneys, or discuss any aspect of Swimlane in the presence of the Walled Attorneys." Exhibit M at 2. This ethical wall, expressly contemplated in ER 1.18(d), was erected on February 5, 2015, shortly after CyberSponse suggested its claim of a potential conflict, and was done in an abundance of caution. Exhibit M. Despite not receiving confidential information from CyberSponse, Snell & Wilmer took this extra step to address CyberSponse's allegations.

**IV.    There is no reasonable expectation that any Snell & Wilmer lawyer will be a witness in this matter.**

Finally, CyberSponse suggests that it is possible that somehow an attorney from Snell & Wilmer <u>may</u> be a witness in this case. Motion at 7:23-26, 8:1-8. There is no basis in the ethical rules or in the law to disqualify a party's lawyer based upon the opposing party's "belief" – unsupported by any evidence in the record – that another lawyer at the firm might, someday be a "potential" witness.

CyberSponse cites only one case on this issue, *United States v. Prantil*, 764 F.2d

---

[10] The "Walled attorneys are Ryan Ricks, Pat Fowler, David Caplan, Brett Johnson, Nick Kunz, Alex Thoreen, Mark Williams, Todd Komaromy, Chuck Hauff, Lee Fraley, Chris Colyer, Becky Winterscheidt, and anyone else at the firm who has had contact with CyberSponse." Exhibit M at 2.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

548 (9th Cir. 1985) (cited in Motion at 7:24). There, addressing a criminal case from California, the Ninth Circuit held that the advocate-witness rule meant that the prosecutor should have been recused from trying a case in which he was a material witness. *Id*. at 551-4, 557. The defendant in *Prantil* was an attorney charged with perjury, false statements, and being an accessory after the fact. *Id.* at 549. As the Ninth Circuit described, the prosecutor "was a witness to, and indeed a participant in, some aspect of all of the events alleged in the indictment." *Id.* at 551. Nothing to that effect is present here.

A motion for disqualification requires "a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client." *Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 105, 624 P.2d 296, 302 (1981); *see also Sec. Gen. Life Ins. Co. v. Superior Court,* 149 Ariz. 332, 336, 718 P.2d 985, 989 (1986) ("We conclude, therefore, that [moving party] failed to make any evidentiary showing that [opposing counsel] was a necessary witness. Therefore ER 3.7 cannot be used to disqualify him."). Otherwise, "[b]y misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons." *Cottonwood*, 128 Ariz. at 105, 624 P.2d at 302 (citations omitted). CyberSponse has made no showing that any Snell & Wilmer attorney will give evidence material to the issues in this case, that the evidence could not come from another source, or that the testimony would prejudice Swimlane. *See Sec. Gen. Life Ins. Co.*, 149 Ariz. at 336, 718 P.2d at 989 ("This is not a case in which the trial judge was required to balance conflicting values or evidence so that we must defer to his discretion. It is a case in which there was no evidence to support the disqualification order. That order, therefore, was in excess of the judge's authority and was an abuse of discretion.")(citation omitted).

Moreover, even if one Snell & Wilmer attorney somehow became a witness, Arizona's ethics rules do not require disqualification of the entire firm. Specifically, ER 3.7(b) provides: "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by ER 1.7

or ER 1.9."[11]

**V.      Swimlane Does Not Oppose The Request for Stay of Discovery.**

As the parties and Court discussed during the May 30, 2017 Rule 16 Scheduling Conference, a stay of discovery is appropriate.  Swimlane requests that the Court consider conducting an additional Rule 16 Scheduling Conference to evaluate revised deadlines after this motion is resolved.

**Conclusion**

Defendants' tactical efforts to interfere with the attorney-client relationship between Swimlane and Snell & Wilmer are not supported by the law or facts and should be rejected.  For the foregoing reasons, the Motion should be denied.

DATED this 17th day of July, 2017.

SNELL & WILMER L.L.P.


By: /s/ Patricia Lee Refo
    Patricia Lee Refo
    Creighton P. Dixon
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202
    *Attorneys for Non-Party Snell & Wilmer,*
    *LLP*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

_____

[11] As discussed above, CyberSponse is not, and has never been a client of the firm that would preclude the firm pursuant to Ethical Rules 1.7 or 1.9.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants

Dennis I Wilenchik
John D. Wilenchik
Brian J. Hembd
Wilenchik & Bartness, P.C.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
*Attorneys for Defendants*

/s/ Eydie Jerome

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4836-8909-9083